

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-1995

# Robertson v Fiore

Precedential or Non-Precedential:

Docket 94-5485

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Robertson v Fiore" (1995). *1995 Decisions.* Paper 222.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/222

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 94-5485

----------

KEVIN ROBERTSON

Appellant

v.

ALBERT FIORE;
HUDSON COUNTY IMPROVEMENT AUTHORITY

----------

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 92-cv-03332)

----------

Argued Wednesday, June 28, 1995

BEFORE:  HUTCHINSON, ROTH and GARTH, Circuit Judges

----------

(Opinion filed August 16, 1995)

----------

                    Norman A. Doyle, Jr.  (Argued)
                    Doyle & Brady
                    377 Kearny Avenue
                    Kearny, New Jersey  07032


                    Attorney for Appellant


                    Gerald T. Ford  (Argued)
                    Adam J. Hanover
                    Siff Rosen

1

One Gateway Center
Suite 500
Newark, New Jersey  07102-5311

Attorneys for Appellees

----------

OPINION OF THE COURT

----------

PER CURIAM:

Kevin Robertson, a member of the Democratic party, appeals from an order granted summary judgment in favor of his former employer, the Democratically contro[...] Hudson County Improvement Authority (HCIA), on his 42 U.S.C. § 1983 claim. Robertso[...] alleged a violation of his First and Fourteenth Amendment right to political associ[...] and a violation of his Fourteenth Amendment right to due process.

We conclude that the record does not support an inference that the HCIA discharged Robertson on account of his political affiliation and does not support h[...] claims to a property or liberty interest in his employment protected by the Fourtee[...] Amendment. We therefore affirm the judgment of the district court on this ground. [...] write to clarify that the constitutional limitations on political patronage, recogn[...] Elrod v. Burns, 427 U.S. 347 (1976), Branti v. Finkel, 445 U.S. 507 (1980), and Rut[...] Republican Party of Illinois, 497 U.S. 62 (1990), extend to intraparty political di[...] as well as interparty political disputes.

I.

After working as a legislative aide to the Gerald McCann, former Mayor of [...] City, Robertson was appointed as a Supervisor at the HCIA's waste processing center[...] April 15, 1991. The HCIA is responsible for the pick up and disposal of all Jersey[...] municipal waste. After classifying waste as either standard or bulky waste at a so[...] facility, the HCIA ships the refuse to a landfill operated by the Hackensack Meadow[...] Development Commission ("HMDC") or to an out-of-state facility. As a supervisor, [...] Robertson was one of three people responsible for the classification and management [...] waste as it arrived at the HCIA sorting facility.

Robertson's short tenure at HCIA was marked by difficulties. Robertson's [...] failure properly to classify waste prompted complaints by Waste Management, the com[...] which handled HCIA waste bound for the HMDC landfill. Albert Fiore, the HCIA Execu[...]

1

Director, noted that in May 1991 he found Robertson seated in a location where it w[...] impossible to examine the incoming waste for which he was responsible.  On numerous occasions, Robertson smoked in the working areas of the HCIA sorting facility despi[...] verbal and written warnings to stop. Because dry paper is scattered around the faci[...] Robertson's smoking endangered other workers and the building.  Following personal conflicts, Robertson threatened his coworkers that he would use his relationship wi[...] Mayor McCann to have them discharged and physically intimidated at least one of his subordinates.

In an affidavit, Robertson alleged that his mistakes in classifying waste[...] the result of sporadic training by HCIA, an account not supported by other evidence[...] record. Robertson admitted to smoking at the sorting facility but alleged that othe[...] smoked.  Robertson does not deny that Waste Management complained about his failure[...] classify waste properly or that Waste Management complained that he sought to intim[...] its employees based on his political affiliations. Nor does he deny Fiore's account[...] failure to monitor trucks properly in May 1991.

In an attempt to address these concerns about Robertson's performance, Fi[...] brought the complaints to the HCIA Board's attention on June 5, 1991 and received [...] authority from the HCIA Board to discipline or fire employees in his own discretion[...] Fiore gave HCIA employees notice of his authority on June 7.

On the same day, Robertson received a phone call from Mayor McCann's offi[...] McCann had entered a disputed race for Chairman of the Hudson County Democratic Par[...] Both McCann and Robert Janiszewski, the Hudson County Executive, were seeking contr[...] the Chairmanship and the party.  McCann asked Robertson to organize the city of Kea[...] support of his candidacy.  Robertson took leave on June 9 and June 10 to support Mc[...]

---

[1]  Robertson contends that the meeting minutes do not mention his name even though [...] reflect the grant of personnel authority to Fiore.  Robertson does not deny that he[...] personnel trouble nor did he seek any evidence from participants at the meeting tha[...] was not mentioned.

efforts.  Because the leave required administrative approval, Fiore became aware of Robertson's activity.

On June 11, 1991, at separate meetings, both McCann and Bruce Walter, Janiszewski's candidate, were elected as Chairman with competing claims.  Fiore sup Janiszewski in the election.  Ultimately, McCann's election was declared invalid.

Following these elections, a political battle erupted for control of the Between June 11 and July 1, McCann sought to replace the HCIA Board and terminate F McCann's attempts failed, and on August 8, 1991, Janiszewski forced a reorganizatio the HCIA Board and eliminated all of McCann's supporters.

In the interim, Robertson continued to defy HCIA rules. On June 7, 1991, Robertson was reprimanded by his political ally Jerry Papick for smoking at the HCI facility.  On the same day, another employee filed a complaint that Robertson had c Fiore a derogatory name and had questioned Fiore's authority.   On June 13, 1991, HCIA employees reported that Robertson had interfered with their work, had harassed based on their political affiliation, and had verbally and physically threatened th

On June 20, 1991, Fiore placed three memos in Robertson's files, document complaints of misconduct.  The next day, Fiore notified Robertson that he intended discharge him for insubordination and poor performance and suspended him with pay, an administrative hearing.  The HCIA's affidavits state that other McCann supporter retained after the political dispute was resolved.

After legal wrangling between Robertson and the HCIA regarding whether th grievance hearing should be transcribed, Robertson received a hearing on the miscor charges. Robertson complained that the hearing was conducted by Sheldon Cohen, a pa at DeCotiis & Pinto, a law firm which was representing Fiore and Janiszewski in a s legal challenge to their authority over the HCIA.  Cohen denied Robertson's motion disqualify, heard Robertson's grievance claim, and affirmed the decision in HCIA's

3

Soon thereafter, Robertson filed this 42 U.S.C. § 1983 claim, alleging a

violation of his first amendment right to political association, a violation of the

process clause, and pendent state law claims.  Following discovery, the district co

granted the HCIA's motion for summary judgment on all Robertson's claims.  The dist

court granted judgment on the due process claims because Robertson failed to demons

any protected liberty or property interest.  With respect to the first amendment cl

the court concluded that dismissals based on intraparty conflicts do not state a cl

under the first amendment and that Robertson failed to produce evidence which would

a jury to conclude that his political association was a substantial cause of his

dismissal.  Robertson filed a timely notice of appeal.

## II.

We exercise plenary review over a grant of summary judgment.  <u>Chipollini</u>

<u>Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir.) (en banc), <u>cert. dism'd</u>, 483 U.S.

(1987).  We apply the same test that the district court should have applied initial

<u>Id.</u>  Summary judgment is appropriate only when the admissible evidence fails to

demonstrate a genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law.  <u>Id.</u>; <u>see</u> Fed. R. Civ. Proc. 56(c) (1994).  In reviewi

record, we give the nonmoving party the benefit of any reasonable inferences that c

drawn from the record, leaving credibility determinations for trial.  <u>Josey v. John</u>

<u>Hollingsworth Corp.</u>, 996 F.2d 632, 637 (3d Cir. 1993); <u>Gray v. York Newspapers, Inc</u>

F.2d 1070, 1077 (3d Cir. 1992); <u>Chipollini</u>, 814 F.2d at 900.

## III.

"To the victor belong only those spoils that may be constitutionally obta

<u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62, 64 (1990).  In this manner, Jus

Brennan summarized the principle, recognized by the Supreme Court in <u>Elrod v. Burns</u>

U.S. 347 (1976) and <u>Branti v. Finkel</u>, 445 U.S. 507 (1980), that public agencies may

hire, transfer, promote, or discharge public employees based on their political

affiliations unless their work requires political allegiance. This principle flows

the constitutional prohibition against discharging public employees on account of t

speech regarding issues of public concern.  <u>See</u> <u>Connick v. Myers</u>, 461 U.S. 138, 142

(1983); <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968).

To make out a claim of discrimination based on political association, a p

employee must prove (1) that the employee works for a public agency in a position c

require a political affiliation,[2] (2) that the employee maintained an affiliation w

---

[2]  While the employee must demonstrate employment by a public entity, the employer
the burden of proving that the position is one for which party affiliation is an

5

political party, and (3) that the employee's political affiliation was a substantia

motivating factor in the adverse employment decision.  Laskaris v. Thornburgh, 733

260, 265 (3d Cir.), cert. denied, 469 U.S. 886 (1984); Perez v. Cucci, 725 F. Supp.

238-39 (D.N.J. 1989), aff'd, 898 F.2d 139 (1990).  If the employee demonstrates the

elements, the employer may avoid a finding of liability by demonstrating by a

preponderance of the evidence that it would have made the same decision even in the

absence of the protected affiliation.  Mt. Healthy City School Dist. Bd. of Educati

Doyle, 429 U.S. 274, 287 (1977); Laskaris, 733 F.2d at 264.

The HCIA does not dispute that Robertson was a public employee whose posi

does not require political allegiance. Thus, that element of Robertson's claim is

satisfied.

A.

However, the HCIA argues that Robertson did not maintain a protected poli

affiliation because Robertson belonged to the same political party as Fiore and the

HCIA officers.  According to the HCIA, the constitution comes into play only when t

dispute is between members of a different political party.  Hence, HCIA maintains t

the present context, only Republicans are protected from politically motivated disc

by the Democratically controlled HCIA Board and administration.  We disagree.

The constitutional prohibition against patronage derives from the coerci

aspects of the spoils system which inhibit the rich political discourse protected k

first amendment.  See Elrod, 427 U.S. at 355-60.  Without the protection afforded k

constitution, employees might forgo the expression of their political beliefs or

artificially change their political association to avoid displeasing their supervis

---

appropriate requirement, should it choose to raise the issue.  Peters v. Delaware F
Port Auth. of Penn. & New Jersey, 16 F.3d 1346, 1353 (3d Cir.), cert. denied, 115 S
62 (1994); Laskaris v. Thornburgh, 733 F.2d 260, 264 n.4 (1989), cert. denied, 469
886 (1984).

Id. Such coercion, whether direct or indirect, is incongruent with a free politica

marketplace.

The danger that employees will abandon the expression or exercise of thei

political beliefs to appease their supervisors is not diminished because a supervis

supports a different identifiable faction within a party as compared to a different

altogether. Tomczak v. City of Chicago, 765 F.2d 633, 640 (7th Cir.), cert. denie

U.S. 946 (1985). Whenever an employee, whose position does not require political

decision-making, yields his political will to his superior, the political process i

harmed whether the employee is of the same or a different party.

Because of the dominance of one political party in some locations, intrap

battles will sometimes overshadow interparty battles. Id.; Barnes v. Bosley, 745 F

501, 506 n.2 (8th Cir. 1984). For example, in Cook County, Illinois, Democratic d

may diminish the significance of all elections following the primaries. In Orange

California, Republican influence may similarly overwhelm Democratic opposition. If

first amendment did not reach intraparty patronage practices, public employees in t

and similar locations would not enjoy the same political rights as their counterpar

more politically diverse locales.

As the Seventh Circuit has recognized, opposition to a manager's politica

superiors can "make[] the candidate a political enemy of his boss whether or not th

members of the same party -- some of the bitterest political fights are intraparty

consider Senator Edward Kennedy's campaign to supplant President Carter as the Demo

Party's 1980 Presidential candidate, or Patrick Buchanan's campaign to supplant Pre

Bush as the Republican Party's 1992 Presidential candidate." Wilbur v. Mahan, 3 F.

218 (7th Cir. 1993).

Previously, in Liotta v. Borough of Springdale, 985 F.2d 119 (3d Cir. 199

had considered the question presented here, but did not decide it because there was

7

evidence that Liotta's political affiliations contributed to his discharge. Nonethe

we expressed concern with according intraparty disputes equal weight:

> Certainly if First Amendment protections against terminations for political reasons are to be extended beyond the clearly delineated situations in which employees claim they were discharged by reason of a change in the party controlling the government office with the power of appointment and discharge, a point we do not decide, an employee's case must be based on more than speculation. Otherwise, there is a danger that disputes among public officials of every nature would be characterized as "political" in an attempt to bring the action within the First Amendment framework.

Id. at 122. Whatever concern we had in Liotta that employees might manufacture

"political" disputes to seek a remedy for layoffs which resulted from poor performa

this case does not present them. Where, as here, a public employee is associated w

identifiable political faction within a single party, we need not be concerned that

activities were not legitimately political or legitimately divisive.

In this case, McCann and Janiszewski campaigned vigorously against one an

for the leadership of the Hudson County Democratic party. This fiercely contested

political battle proved to have an important impact on the predominately Democratic

county. The record makes clear that Fiore and Robertson had aligned themselves on

opposing sides of this dispute. The fact that the record does not support Roberts

claims that he was the subject of a political discharge does not mean that Roberts

affiliation with the McCann faction of the Democratic party lacked protection under

first amendment.

Hence, because the dangers inherent in vigorous intraparty conflicts are

equivalent to the dangers presented by interparty conflict, we conclude that the

Constitution, as interpreted in Elrod, Branti, and Rutan, protects a Democratic emp

equally from discharge for supporting a losing Democrat as for supporting a losing

Republican. In doing so, we join all other courts that have previously addressed t

question. Dickenson v. Quarberg, 844 F.2d 1435, 1437 n.2 (10th Cir. 1988); Tomczak

of Chicago, 765 F.2d 633, 640 (7th Cir.), cert. denied, 474 U.S. 946 (1985); Barnes

8

<u>Bosley</u>, 745 F.2d 501, 506 n.2 (8th Cir. 1984), <u>cert. denied</u>, 471 U.S. 1017 (1985);

also, <u>Bennis v. Gable</u>, 823 F.2d 723, 727 n.4 (3d Cir. 1987) (reaching the same conc

in dicta); <u>Perez v. Cucci</u>, 725 F. Supp. 209 (D.N.J. 1989) (finding a violation in t

of an intraparty conflict without expressly addressing the question), <u>aff'd</u>, 898 F.

(1990).


B.

Having considered the first two elements of Robertson's first amendment c

we reach the issue of causation.  We find no merit in Robertson's argument that he

produced sufficient evidence to substantiate a claim that his political affiliation

Mayor McCann was a substantial or motivating factor in his discharge.

The record amply reflects Robertson's poor performance at the HCIA.  He

endangered the sorting facility by his smoking. He verbally and physically threaten

other employees.  He demonstrated little interest in his responsibilities and repea

misclassified waste, imposing additional costs on the HCIA and its contractors.

Robertson admits most of this behavior.  Nonetheless, he seeks to defeat

judgment by arguing that others performed poorly but were not discharged as well.

evidence is belied by the frequency and number of complaints from HCIA contractors

employees directed at Robertson and Robertson alone.  Further, Robertson fails to i

the similar situated employees who he alleges also flaunted HCIA rules and does not

identify their political affiliation to permit a relevant comparison.  Nor does he

the HCIA's statement that three identified McCann supporters were retained by the H

following the political battle.

This record will not support a conclusion that politics, rather than poor

performance, caused Robertson's discharge, and thus we affirm the district court's

of summary judgment on the first amendment claims.

9

IV.

Similarly, we find no merit in Robertson's claims that the HCIA deprived due process. Robertson was an at will employee. Consequently, he lacks a protecte property interest in his position within the meaning of the Fourteenth Amendment. U National Residents Matching Program, 928 F.2d 1392, 1398-99 (3d Cir. 1991) (limitin protected property interest to claims of legal entitlement, dependence, or permanen Nor does he allege that the HCIA foreclosed his opportunity to pursue a career by i a legal or administrative disability which deprived him of a protected liberty inte See Siegert v. Gilley, 500 U.S 226, 234 (1991) (damage flowing from harm to reputat alone does not give rise to a protected liberty interest); Valmonte v. Bane, 18 F.3 1001 (2d Cir. 1994) (requiring an affirmative disability to make out a due process Consequently, Robertson's due process claim fails. Robb v. Philadelphia, 733 F.2d 292 (3d Cir. 1984).[3]


V.

Because the record does not reflect genuine issues of disputed material f Robertson's first amendment or due

---

[3] Robertson's brief does not argue that the district court improperly granted summ judgment on his state law claims. Accordingly, we consider any appeal from these cl be waived. Industry Network Sys. Inc. v. Armstrong World Indus. Inc., 54 F.3d 150, n.4 (3d Cir. 1995).

10

process claims, we will affirm the district court's grant of summary judgment.